**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
**CERTAIN UNDERWRITERS at LLOYD'S,**
**et al.,**

                         **Plaintiffs,**              **MEMORANDUM**
                                                      **AND ORDER**

    -against-
                                                                  **16-MC-2778 (FB)**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION, et al.,**

                         **Defendants.**
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

In the underlying declaratory judgment action (the "underlying action") to which this miscellaneous proceeding relates, plaintiffs London Market Insurers ("LMI") seek, *inter alia*, a determination as to whether a series of liability insurance policies, issued to defendant National Railroad Passenger Corporation ("Amtrak") more than three decades ago, obligate the plaintiff-insurers to reimburse Amtrak for costs incurred in connection with environmental waste allegedly found on Amtrak's property. See Amended Complaint (Nov. 11, 2014) ("Am. Compl.") ¶¶ 1-2, Electronic Case Filing Docket Entry ("DE") #111[1]; Amtrak Amended Answer, Counterclaims & Cross-Claims (Dec. 30, 2015) ("Amtrak Am. Ans."), DE #277.

Currently pending before the Court is Amtrak's motion to enforce a subpoena *duces tecum* served upon non-party Resolute Management, Inc. ("RMI"),[2] which directs litigation,

---

[1] Citations to docket entries bearing a number higher than eleven refer to the docket in the underlying action, docket number 14cv4717 (FB).

[2] The instant motion was originally filed in the Eastern District of Pennsylvania, the district of compliance, and was transferred to this Court on consent. See Paperless Order Granting Motion to Transfer (Oct. 31, 2016), DE #5.

manages discovery and conducts the handling of Amtrak's claims for coverage, including those at issue in the underlying action, on behalf of all the Underwriters at Lloyd's who are parties to the coverage case and on behalf of a number of additional London insurers and non-London insurers.[3] See Amtrak's Motion to Compel (Oct. 11, 2016) ("Amtrak Mot."), DE #1. In the underlying action, the Court previously ruled on, and in substantial part denied, a motion for a protective order filed by the RMI-represented entities concerning the same subpoena served upon RMI. See Minute Entry (Aug. 9, 2016) ("8/9/16 Minute Entry"), DE #423.

For the reasons set forth below, the Court grants Amtrak's motion to compel, except to the limited extent described herein.

## BACKGROUND

Plaintiffs in the underlying action are insurers who "did business in the London Insurance Market and who issued or participated in — that is, subscribed to an agreed percentage share of the risk of —" one or more liability insurance policies issued to Amtrak during the period beginning on or about June 1, 1972 and ending in 1986 (the "Policies"). See Am. Compl. ¶¶ 1-2. According to the Amended Complaint, due to certain environmental

---

[3] The RMI-represented entities are: all Lloyd's Underwriters subscribing to the policies at issue; Yasuda Fire & Marine Insurance Co. (UK) Ltd; Nissan Fire & Marine Insurance Company; Winterthur Swiss Insurance Company, Accident & Casualty Co., Accident & Casualty Insurance Co. of Winterthur, Accident & Casualty Insurance Co. of Winterthur (No. 2A/C), and Accident & Casualty Insurance Co. of Winterthur (No. 2A/C); American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. in its own right and as successor to Landmark Insurance Company; and The Continental Insurance Company (collectively, the "RMI-represented entities"). See Declaration of Andrew Donaldson (Aug. 2, 2016) ("Donaldson Decl.") ¶¶ 3, 4, DE #416-1; Declaration of Brian E. Lavigne (Aug. 2, 2016) ("Lavigne Decl.") ¶ 3, DE #416-2; Declaration of Susan Breen-Quinn (Aug. 2, 2016) ("Breen-Quinn Decl.") ¶ 3, DE #416-3.

contaminations and/or asbestos exposure, Amtrak demanded coverage under the Policies.  See id. ¶¶ 7-8.  Thereafter, LMI and Amtrak entered into a standstill agreement, and, for many years, attempted to settle the coverage issue in good faith.  See id. ¶¶ 9-11.  In or around 2014, however, Amtrak notified LMI that it wished to terminate the standstill agreement, and this action followed.  See id. ¶ 11.

On November 23, 2015, after Amtrak answered LMI's Amended Complaint and asserted cross-claims and counterclaims, see Answer to Amended Complaint (Nov. 25, 2014), DE #134, and shortly before it impleaded numerous insurers in a Third-Party Complaint (Dec. 30, 2015), DE #278,[4] the parties filed cross-motions to compel discovery, see Amtrak Motion to Compel (Nov. 23, 2015), DE #256; LMI's Motion to Compel (Nov. 23, 2015), DE #255.  In Amtrak's motion, it sought, among other things, to compel production of various types of documents in the Insurers' custody, possession, or control, including, but not limited to, claims, underwriting and document destruction/retention manuals and guidelines.  See Amtrak's Memorandum of Law in Support of Its Cross-Motion to Compel (Nov. 23, 2015) at 9-11, DE #256-1.

On January 29, 2016, the Court heard oral argument on the cross-motions.  See Minute Entry (docketed Feb. 1, 2016) ("1/29/16 Minute Entry"), DE #304; Transcript of Civil Hearing held on January 29, 2016 (docketed Feb. 5, 2016) ("1/29/16 Tr."), DE #309.  During the January 29th oral argument, the Court granted in part and denied in part aspects of both motions to compel.  See generally 1/29/16 Minute Entry.  The Court reserved judgment on

---

[4] LMI and the various other insurers named as parties in the underlying action are collectively referred to herein as the "Insurers."

Amtrak's demand for manuals and document retention policies and encouraged the parties to meet and confer in an attempt to resolve and/or narrow the remaining discovery disputes. See id. at 2. By letter dated March 24, 2016, the parties jointly notified the Court that they were unable to resolve their disputes as to the production of underwriting, claims and document retention manuals. See Joint Status Report (Mar. 24, 2016) at 2, DE #335.

By memorandum and order dated May 16, 2016, this Court addressed the remaining discovery issues raised in Amtrak's November 2015 motion to compel. The Court granted Amtrak's motion as to claims and underwriting manuals to the extent that they "'discuss the disputed policy provisions for the time period of coverage.'" Memorandum and Order (May 16, 2016) ("5/16/16 M&O") at 24, DE #380 (quoting Champion Int'l Corp. v. Liberty Mut. Ins. Co., 129 F.R.D. 63, 66 (S.D.N.Y. 1990)). As to document retention/destruction policies and procedures, the Court ruled that, "[t]o the extent that a particular Policy is either missing or incomplete, that party must turn over the document retention and/or destruction manuals in place from the time of coverage through the present." 5/16/16 M&O at 25.

Amtrak served RMI with a subpoena *duces tecum* on July 19, 2016. See Subpoena (dated July 15, 2016), DE #1-15; Proof of Service (executed on July 19, 2016), DE #1-16. On August 2, 2016, counsel for LMI, acting on behalf of the "RMI-represented entities," filed a motion for a protective order, seeking to prohibit Amtrak from enforcing the subpoena served on RMI. See [RMI-Represented Entities'] Letter Motion for a Protective Order (Aug. 2, 2016) ("8/2/16 Mot. For Protective Order") at 1 & n.1, DE #416. The movants argued that the subpoena sought documents that were duplicative of those already produced to Amtrak by various Insurers, and that Amtrak had failed to "take reasonable steps to avoid imposing

undue burden or expense." See id. at 2 (quoting Fed. R. Civ. P. 45(d)(1)). Moreover, the movants contended that RMI had overseen the collection and production of documents responsive to Amtrak's Rule 34 document requests, and that those entities had produced documents "within RMI's possession, custody, and control pertaining to RMI's work on their behalf." See id. at 1. They also noted that they had not taken the position that documents held by RMI were beyond their control, nor was RMI making that assertion. See id. Further, the RMI-represented entities argued that the subpoena sought documents in violation of the limitations imposed by this Court with respect to the production of claims and underwriting manuals and document retention policies, as described in the May 16, 2016 Memorandum and Order. See id. at 2-3.

During a telephonic proceeding held on August 9, 2016, this Court denied the motion for a protective order, finding that Amtrak had shown a need for the documents and that the movants had failed to establish that RMI's compliance with the subpoena would be unduly burdensome; the Court further concluded that its previous rulings concerning the scope of discovery would "presumptively apply to the RMI documents and those rulings [would] not be disturbed absent a compelling reason such as one based on newly discovered evidence." 8/9/16 Minute Entry at 1. Nevertheless, the undersigned magistrate judge "encourage[d] Amtrak[,] based on the discussions today[,] to perhaps come up with a more focused subpoena." Transcript of Hearing held on August [9], 2016 ("8/9/16 Tr.") at 46, DE #424.[5]

Following the August 9th proceeding, the parties conferred on the scope of the subpoena and Amtrak proposed a revised subpoena for RMI's review. See Revised Subpoena,

---

[5] The transcript is incorrectly dated "August 8, 2016."

DE #4-5.  Apparently, RMI did not view the proposed revisions as "narrow[ing] the scope of the subpoena[,] as the Court advised . . . ."  See E-mail to Dan Healy from John Sullivan dated August 26, 2016, DE #1-20.  On September 9, 2016, RMI served its response to Amtrak's original subpoena, refusing to produce documents responsive to nineteen of the twenty-two categories of documents subpoenaed by Amtrak, and producing only a total of three documents (two of them with redactions).[6]  See Declaration of Daniel J. Healy (Oct. 7, 2016) ¶ 3, DE #1-2; Letter to Rhonda D. Orin and Daniel J. Healy from John C. Sullivan dated September 9, 2016 ("9/9/16 Letter"), DE #1-21.  Amtrak then filed the pending motion to enforce the subpoena in the Eastern District of Pennsylvania.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure sets forth four specific circumstances under which a challenged subpoena should be quashed or modified.  See Fed. R. Civ. P. 45(d)(3)(A).  The subsections that appear to be implicated by RMI's objections to Amtrak's subpoena are Rule 45(d)(3)(A)(iv), which deals with subpoenas that "subject[] a person to undue burden[,]" Fed. R. Civ. P. 45(d)(3)(A)(iv), and Rule 45(d)(3)(A)(i), which addresses subpoenas that "fail[] to allow a reasonable time to comply[,]" Fed. R. Civ. P. 45(d)(3)(A)(i).

---

[6] RMI produced documents responsive to Request #3 in Amtrak's original subpoena, which sought "[a]ll documents concerning or constituting [RMI's] authority to conduct any services, arrange for others to provide any services or have any involvement regarding Amtrak's Claims, including but not limited to documents that set forth or address [RMI's] claims handling authority, settlement authority and authority to authenticate policy terms and conditions."  Subpoena at 3.  RMI represented that documents responsive to Requests #1 and #2 -- which sought "[d]ocuments sufficient to identify all Insurance Companies for which [RMI] conduct[s] any services" and "[d]ocuments sufficient to identify all policies for which [RMI] conduct[s] any services," id. at 2 -- had been or would be produced by LMI, or by RMI in response to Request #3.  See 9/9/16 Letter at 1.

On a motion to enforce or quash a subpoena, the issuing party "bears the initial burden of demonstrating that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Malibu Media, LLC v. Doe, 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at *2 (E.D.N.Y. Sept. 1, 2016) (citation and internal quotation marks omitted). "Once relevance is established, the party seeking to quash a subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." Vale v. Great Neck Water Pollution Control Dist., 14-CV-4229 (ADS)(AYS), 2016 WL 1072639, at *3 (E.D.N.Y. Jan. 8, 2016) (citations and internal quotation marks omitted); accord Malibu Media, 2016 WL 4574677, at *2. "Decisions to limit discovery as overbroad, duplicative, or unduly burdensome are left to the sound discretion of the trial judge." Corbett v. eHome Credit Corp., No. 10-CV-26 (JG)(RLM), 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010); accord Malibu Media, 2016 WL 4574677, at *2; Vale, 2016 WL 1072639, at *3.

## **DISCUSSION**

After hearing from the parties to the coverage action on August 9, 2016, the Court refused to bar Amtrak from seeking to enforce the subpoena that had been served on RMI three weeks earlier; the Court concluded that Amtrak had sustained its burden of establishing a legitimate need for the subpoenaed records and that the movants had failed to show that a protective order was warranted. See 8/9/16 Minute Entry.

RMI does not contend that the subpoenaed records are irrelevant to the claims and defenses in the coverage action. Rather, echoing the arguments advanced by the RMI-represented entities in support of their August 2, 2016 motion for a protective order, RMI now complains that, but for one demand, the categories of documents subpoenaed by Amtrak are

entirely duplicative of the Rule 34 document requests that Amtrak served on LMI and other Insurers. Moreover, RMI contends that any responsive documents in its possession were previously produced by RMI on behalf of the RMI-represented entities, because "by definition responsive documents in the control of [RMI] are in the control of the insurers." Opposition of Resolute Management, Inc. (Oct. 28, 2016) ("RMI Opp.") at 3, DE #4. In fact, the arguments raised by the movants in their August 2, 2016 motion for a protective order are so similar to those advanced by RMI in this proceeding that RMI relies upon the same declarations of its employees that were filed in support of the motion for a protective order. See Donaldson Decl.; Lavigne Decl.; Breen-Quinn Decl.[7]

In addition to arguing that the subpoena is duplicative, RMI also complains that the subpoena is overbroad, see RMI Opp. at 10, "serves no purpose except to avoid this Court's prior rulings[,]" id. at 15, and comes before the Court at a "very late date within a few weeks of close of discovery," id. at 10. For the reasons discussed below, the Court rejects each of RMI's challenges to the subpoena, with one limited exception.

**I.      The Allegedly Duplicative Nature of the Subpoena**

Where discovery is demanded from non-parties, courts must be sensitive to weighing the probative value of the documents sought against the burden of production on the non-party. See Fears v. Wilhemina Model Agency, Inc., No. 02 Civ. 4911 (HB)(HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). Here, however, RMI is not the typical non-party, as it has been "direct[ing] litigation and manag[ing] discovery" for various Insurers in the

---

[7] Ironically, while recycling the arguments previously rejected by this Court, RMI accuses Amtrak of seeking "to re-litigate [the] same issues that have been resolved, and to make an end run around the decisions the Court has previously made." RMI Opp. at 1-2.

coverage action, see 8/2/16 Mot. for Protective Order at 1; RMI Opp. at 3, and has been coordinating with LMI's counsel in RMI's handling of the pending dispute, see RMI Sur-reply (Nov. 14, 2016) ("RMI Sur-reply") at 2, DE #11. Moreover, consistent with precedent from within this Circuit, RMI should not be excused from responding to the subpoena on the ground that Amtrak already has the documents sought. See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560 (RMB)(HBP), 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) ("While [the subpoenaed party's] files for this period may not contain anything that is not already in [the requesting party's] files, this fact alone is an insufficient ground on which to quash the subpoena.") (collecting cases); Burns v. Bank of Am., No. 03 Civ. 1685 (RMB)(JCF), 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007) ("Even if Bank of America already possesses many of the documents in question, this is not a bar to its taking discovery [from non-party] . . . .").

This principle applies with particular force to the instant subpoena. Significantly, Amtrak vigorously disputes the accuracy of RMI's representation that there are no responsive documents in its possession that have not been produced by the RMI-represented entities. See Amtrak Reply (Nov. 8, 2016) ("Amtrak Reply") at 2-3, DE #9. In this Court's view, RMI's representations as to the completeness of the prior productions are too ambiguous and convoluted to warrant an order quashing the subpoena. As was true of the attempts of LMI and other Insurers to secure a protective order from this Court,[8] RMI's protestations that the

---

[8] See, e.g., 8/9/16 Tr. at 9-10 (when asked by the Court whether there are "additional documents held by RMI that were not within the scope of the document demands served on the [I]nsurers," LMI eventually was constrained to say that "it will depend ultimately on how the individual requests are interpreted").

subpoenaed records are duplicative of those produced in response to Amtrak's Rule 34 document requests are subject to a series of qualifications. For example, in challenging the subpoena, RMI asserts, on the one hand, that "claims file documents . . . have already been produced[,]" see RMI Opp. at 2; see also id. at 5, 12, 13; yet, RMI elsewhere states that Amtrak never moved to compel production of the claims files, see id. at 6, and that "documents were not produced [] where LMI objected and Amtrak did not move to compel[,]" see id. at 4; see also 8/9/16 Tr. at 31 (same); id. at 10 (the subpoenaed records "either were sought *or could have been sought* in the ambit of document requests to parties under Rule 34") (emphasis added). Thus, RMI has muddied the record as to whether LMI withheld any claims file documents on grounds other than privilege.[9]

This Court adheres to its August 9, 2016 ruling and reaffirms that "Amtrak has shown a need for the documents and that [RMI has] failed to show that responding to the subpoena would be unduly burdensome." 8/9/16 Minute Entry at 1. As discussed during the August 9th oral argument, the Insurers challenging the subpoena made no showing that the documents to be searched by RMI are so voluminous that the burden on RMI outweighs Amtrak's interest in confirming the accuracy of RMI's representation that all responsive documents have been produced. If RMI has in fact already conducted a search for all the same documents in response to the demands served on LMI and other Insurers, then the question arises why RMI would need to conduct a further search at all: If, as RMI claims, the document requests are

---

[9] RMI should not construe the aforesaid observation as an invitation to "clarify" the record. RMI and the Insurers have now had two bites at the apple, and the Court will not look favorably on any attempt to secure a third.

entirely duplicative of discovery demands propounded on the RMI-represented entities,[10] all that would be required is for RMI to re-produce the documents it previously produced on behalf of its clients.[11] Simply put, it seems that RMI doth protest too much.

As for the subpoena's demand for the production of claims files, RMI appears to suggest, without citation to any authority, that by failing to litigate LMI's objection to Amtrak's Rule 34 demand for claims files, Amtrak has waived its right to move to compel the production of claims files in RMI's possession. See RMI Opp. at 6-7, 10; see also *supra* p. 10. As an initial matter, this argument is curious if RMI has already produced all claims files, as it and LMI repeatedly suggest. In any event, whatever the reason for Amtrak's decision not to pursue those documents from LMI, Amtrak retained the right to seek them from RMI via a subpoena served on July 19, 2016, well in advance of the fact discovery deadline.

---

[10] Even if true, what is critical to the requesting party is whether RMI's *response* to the subpoena would be entirely duplicative – a question that has not produced a straight answer from either LMI or RMI.

[11] One request that RMI concedes is not duplicative of prior demands is Request #22, see RMI Opp. at 7 n.9, which seeks "[a]ll documents concerning the storage and location of any Documents responsive to these requests[,]" see Revised Subpoena. RMI claims that "Amtrak has not moved to compel a response to that request . . . ." RMI Opp. at 7 n.9. In fact, Amtrak moved to compel compliance with the *entire* subpoena, see Amtrak Mot. at 11, 16, and neither side has addressed the merits of that particular demand. The Court finds no basis to quash that aspect of the subpoena. Amtrak complains of what it describes as the inexplicably limited number of documents produced by the Insurers, as well as the non-production of any claims files. Given the absence of any challenge by RMI to Request #22, and the parties' dispute regarding the adequacy of the production, the Court finds that Request #22 is relevant and proportional to the needs of this case. See Fed. R. Civ. 26(b)(1) advisory committee's note to 2015 Amendment (discovery of the "existence, description, nature, custody, condition, and location of any documents . . . is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples").

## II.     The Scope of the Subpoena

RMI additionally assails the scope of the subpoena, complaining that requests for "all documents" are necessarily "overbroad and impermissible." RMI Opp. at 10. RMI's argument oversimplifies the legal standard governing challenges to document demands and subpoenas on grounds of overbreadth. Requests for "all documents" are not *per se* improper; rather, the appropriate inquiry is whether the documents sought are relevant and the burden of compliance is proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1), 45(d)(1).[12] "Where, as here, the material sought by subpoena is relevant, the Court next turns to the question of whether enforcement of the subpoena is unduly burdensome[,]" and its determination on that issue is a discretionary one. Vale, 2016 WL 1072639, at *4 (collecting cases).[13]

Here, RMI has not sustained its burden of demonstrating that the subpoena at issue is overbroad or unduly burdensome. See generally cases cited *supra* p. 7. In its initial response to that subpoena, RMI served a letter listing a series of objections (including overbreadth,

---

[12] During the course of the proceeding on August 9, 2016, the Court "encourage[d] Amtrak . . . to perhaps come up with a more focused subpoena." 8/9/16 Tr. at 46. That comment was not addressing the subpoena's call for "all documents" falling within the listed categories; rather, the Court was reminding Amtrak that absent "changed circumstances," its prior rulings limiting discovery from the Insurers would presumptively apply to the documents subpoenaed from RMI.

[13] RMI relies on case law from the Southern District of New York in characterizing as "impermissible" subpoenas that call for the production of "all documents" falling within described categories. See RMI Opp. at 10 (citing, *inter alia*, Gropper v. David Ellis Real Estate, L.P., No. 13 Civ. 2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014)). Contrary to RMI's broad generalization, the propriety of a demand for "all documents" must be assessed in light of the relevance of the specific category of documents sought. See, e.g., Gropper, 2014 WL 518234, at *4 ("While the number of the defendants' employees is relevant, the request for 'any and all' documents *concerning that subject* is inherently overbroad.") (emphasis added).

vagueness and undue burden) that purportedly "apply to each and every category of documents requested." See Letter to Rhonda D. Orin and Daniel J. Healy from John C. Sullivan dated August 2, 2016 at 1, DE #4-3.[14] Eventually, one month after this Court denied the Insurers' motion for a protective order, RMI produced documents responsive to one of the twenty-two categories of subpoenaed documents and continued to rely on its general objections in response to all but two of the remaining requests. See 9/9/16 Letter.

The Court finds that RMI acted inappropriately in lodging "non-specific, boilerplate objections" in response to nineteen of the twenty-two requests. See Distefano v. Law Offices of Barbara H. Katsos, PC, No. CV 11-2893 (JS)(AKT), 2013 WL 1339536, at *6 (E.D.N.Y. Mar. 29, 2013); Freydl v. Meringolo, 09 Civ. 07196 (BSJ)(KNF), 2011 WL 2566087, at *4 (S.D.N.Y. June 16, 2011). "[E]ven where a legitimate objection to a discovery request exists, such objection does not permit the objecting party to refuse to produce *any* documents whatsoever." Robbins & Myers, Inc. v. J.M. Huber Corp., No. 01-CV-0201 E(F), 2003 WL 21384304, at *5 (W.D.N.Y. May 9, 2003). RMI's objection to the scope of the subpoena is overruled.

## III. The Impact of the Court's Prior Rulings

In addition to challenging the subpoena served on RMI as overbroad and duplicative of Amtrak's Rule 34 demands, RMI accuses Amtrak of attempting to relitigate matters already

---

[14] RMI now suggests that "LMI did not seek a protective order on burden grounds." RMI Opp. at 9 n.10. RMI's contention is belied by the record. See 8/2/16 Mot. for Protective Order at 2 (complaining that Amtrak had failed to "take reasonable steps to avoid imposing undue burden or expense"); 8/9/16 Tr. at 14 (arguing that the subpoena "adds an onus which is not necessary").

resolved by the Court. See RMI Opp. at 10-11. In particular, RMI complains that Amtrak seeks claims handling manuals, but that, "with limited exceptions not applicable here, the Court has already ruled that such manuals are not discoverable, . . . and Amtrak offers no grounds for departing from that ruling now." RMI Opp. at 2; see id. at 11. This Court agrees.

In its May 16, 2016 Memorandum and Order, the Court ruled that "claims and underwriting manuals should be limited [to those] that 'discuss[] the disputed policy provisions for the time period of coverage.'" 5/16/16 M&O at 24 (citation omitted). Thereafter, in denying the Insurers' August 2, 2016 motion for a protective order, the Court did make clear that its "prior rulings will presumptively apply to the RMI documents . . . ." 8/9/16 Minute Entry. RMI now asks this Court to reaffirm its prior limitation on the discovery of underwriting and claims manuals. See RMI Opp. at 2, 11. Amtrak's reply to RMI's submission ignores this request. See generally Amtrak Reply. Amtrak thus has not rebutted the presumption that the Court's prior ruling applies to RMI's production of such manuals.[15]

RMI also notes in passing in a footnote that Amtrak's subpoena seeks "*all* document retention policies," despite the limit set by the Court on the Insurers' production of document retention policies. See RMI Opp. at 2 n.3. Specifically, in ruling that the Insurers must disclose document retention and/or destruction manuals "[t]o the extent that a particular Policy

---

[15] Nevertheless, the fact that LMI and perhaps other Insurers may not have produced any claims handling manuals does not absolve RMI of its obligation to search for responsive documents. See generally 8/9/16 Tr. at 28 (Amtrak explains that, in response to Amtrak's Rule 34 demands, LMI claimed that they "ha[d] no standard claims handling manual" and that "now we get it. It's because [LMI] weren't doing claims handling.").

-14-

is either missing or incomplete," 5/16/16 M&O at 25, the Court overruled LMI's blanket objection to Amtrak's Rule 34 request for such manuals and crafted an order that responded to Amtrak's argument that such materials would "shed light on Policies that are missing or incomplete[,]" id. at 24. Given the discovery that has since been conducted in the coverage case, and what Amtrak describes as the paucity of claims handling information in the document productions of the plaintiff-insurers, see Amtrak Reply at 2; see also Amtrak Mot. at 4-5, the Court concludes "that there should be a broader disclosure of document retention and destruction policies" by the third-party claims handler, see 8/9/16 Tr. at 40. Therefore, RMI is directed to produce, in addition to the documents encompassed within the Court's May 16th ruling, document retention and destruction manuals and policies relating to claims files and claims handling documents. See id. at 7-8.

While accusing Amtrak of attempting "to make an end run around the decisions the Court has previously made[,]" RMI Opp. at 1-2, RMI cites no other ruling of this Court that the subpoena is alleged to circumvent. As discussed in the next section, RMI does, however, identify a category of documents that LMI have reportedly withheld, but not with the blessing of the Court.

## IV. Documents Postdating 2005

Seeking to justify LMI's production of only a limited number of claims handling documents "originating from [RMI,]" RMI asserts, in a single paragraph opposing Amtrak's motion to compel, that pursuant to a "stand-still agreement in effect between Amtrak and [LMI,] . . . LMI have not produced any claims-related documents received or sent from 2005 onward[.]" RMI Opp. at 12. RMI does not proffer or even further identify the referenced

agreement. In reply, Amtrak complains that it had not previously been informed that RMI "did not search for or produce any document with a date after 2005[.]" Amtrak Reply at 5. According to Amtrak, "Amtrak continued to provide information about claims after 2005 and [RMI] and its predecessors continued to handle them, so those files should have been produced." See id.[16] Lastly, Amtrak contends that an agreement recently negotiated by the parties and filed with the Court in the coverage action expressly provides for the production of settlement communications even if exchanged after 2005. See id.; Agreement Regarding Documents Exchanged in the Course of Pre-Litigation Settlement Negotiations (Oct. 18, 2016) ("October 2016 Agreement"), DE #463.

In its sur-reply, RMI again relies on what it describes as "a Stand-Still Agreement dated September 19, 2005," which according to RMI "bars the use or disclosure in litigation of virtually all documents exchanged after that date," as well as "a Supplemental Confidentiality and Non-Disclosure Agreement dated September 25, 2007, which reaffirmed and explained the confidentiality obligations of the 2005 agreement." RMI Sur-reply at 2. As before, RMI has not supplied the Court with either document.[17] RMI does represent, based on information provided by LMI's counsel, that LMI will "shortly" be producing approximately 10,000 pages of documents pursuant to the October 2016 Agreement. See RMI Sur-reply at 2; Declaration

---

[16] Amtrak additionally contends that, as a non-party to the standstill agreement, RMI had no basis for withholding documents alleged to be settlement communications between LMI and Amtrak. See Amtrak Reply at 5.

[17] After scouring the massive court file in the coverage action, the Court located the 2005 Standstill Agreement in a filing from January 2015. See DE #178-2. The 2007 supplemental agreement does not appear to be part of the court file.

-16-

of Aisha E.R. Bembry ¶ 19, DE #478-16.

The Court declines to interpret the 2005 or 2007 agreements, or to opine on whether RMI, a non-party to the former, is entitled to rely on its confidentiality provisions -- an issue briefed by neither side to the instant dispute. Whatever the scope of those earlier agreements, the fact remains that the October 2016 Agreement expressly "replaces any previous agreement that may have existed between Amtrak and any party regarding documents they exchanged in the course of settlement negotiations that took place prior to initiation of the [Coverage] Action on or about August 8, 2014."[18] October 2016 Agreement at 1. Moreover, the October 2016 Agreement provides that, "[t]o the extent . . . that any party has additional documents to produce as a result of this agreement, that party shall make a supplemental production promptly." Id. at 3.[19]

Whether Amtrak should have realized that LMI were withholding *all* claims documents postdating the 2005 Standstill Agreement[20] is an issue that the Court need not resolve. To be sure, at the discovery hearing held on January 29, 2016, the parties had debated the impact of the 2005 Standstill Agreement on the Insurers' discovery obligations and assertions of work

---

[18] Having relied on the 2005 Standstill Agreement even though it is not a signatory, RMI will not now be heard to argue that it is not bound by the October 2016 Agreement.

[19] The October 2016 Agreement expressly requires the production of the following, even if denominated settlement communications: "(a) documents marked or titled 'site summary', (b) documents marked or titled 'claim summary,' (c) lists of policies and summaries of policy periods, limits, terms and similar information; (d) documents prepared by a party to this action, or an entity acting on behalf of that party, and shared by that party with one or more non-parties in a context other than Settlement Communications." October 2016 Agreement at 2. As noted above, LMI reportedly will be making a supplemental production of approximately 10,000 pages pursuant to the October 2016 Agreement.

[20] Compare RMI Opp. at 12 with Amtrak Reply at 5.

product.  See generally 1/29/16 Tr.  While LMI stated that they had construed Amtrak's document demands as not seeking "settlement documents," see id. at 190, Amtrak took the position that not all claims file information postdating the 2005 Standstill Agreement "was necessarily work product," id. at 179, adding that there could be documents attached to "settlement letters" that would not be protected from disclosure, see id. at 192-93.  In the context of discussing work product protection, this Court observed that, while the 2005 Standstill Agreement evidenced that litigation was in fact contemplated, the proponent of the privilege would nevertheless have to show that post-standstill documents would not have been prepared in substantially the same form absent the threat of litigation.  See id. at 212.

Accordingly, this Court had no reason to believe that LMI and other Insurers would withhold (and omit from their privilege logs) *all* claims-related documents postdating 2005.  Indeed, in August 2016, the Court heard lengthy arguments from the parties concerning the subpoena served on RMI, yet not one word on this supposed carve-out from LMI or the other Insurers.  See generally 8/8/16 Tr.; see also 8/2/16 Mot. for Protective Order.  RMI's recent revelation that "LMI have not produced any claims-related documents received or sent from 2005 onward" (RMI Opp. at 12) thus was RMI's October surprise.

If LMI have not yet produced the 10,000 pages of documents referenced in RMI's sur-reply, they are directed to do so forthwith.  As for RMI, the entity conducting claims handling on behalf of LMI and other insurer-clients in the underlying litigation, it must comply with Amtrak's subpoena, and will not be allowed to withhold responsive documents simply because they postdate the 2005 Standstill Agreement.

## V. The Time For Compliance

While not expressly challenging the subpoena as "fail[ing] to allow a reasonable time to comply[,]" Fed. R. Civ. P. 45(d)(3)(A)(i), RMI does complain that Amtrak should not be permitted "to re-open the entire [discovery] process only a few weeks before close of discovery." RMI Opp. at 15; see id. at 10. RMI ignores the fact that it was served with the subpoena more than four months ago; that the entities represented by RMI unsuccessfully moved for a protective order in the coverage action; that rather than comply with the subpoena following the Court's ruling, RMI took one month before serving a handful of documents and boilerplate objections, causing Amtrak to move to compel compliance; and that RMI then delayed the resolution of the motion by withholding its consent to transfer the resulting satellite litigation to this District until after the motion papers had been filed in the Eastern District of Pennsylvania. See Amtrak Mot. at 10. Simply put, the limited time remaining for compliance with the subpoena is a problem created by RMI and the Insurers on whose behalf it acts.

## VI. Privilege Logs

Finally, in response to Amtrak's demand for a privilege log, see Amtrak Mot. at 11, and without citation to any supporting authority, RMI asserts that "Amtrak is not entitled to yet another privilege log." RMI Opp. at 15. To be sure, RMI need not reconstruct large portions of the privilege logs previously crafted by the Insurers; to the extent that RMI's assertion of privilege as to a specific document is identical to that of the Insurer for whom RMI is conducting claims handling, RMI may instead satisfy its privilege-log obligation by identifying the document being withheld on the same privilege grounds. On the other hand, to the extent

that the subpoena calls for documents that were not subject to the Rule 34 demands served on the Insurers, RMI must create a detailed privilege log for any such documents being withheld as privileged.

## CONCLUSION

For the foregoing reasons, Amtrak's motion to compel is granted. RMI must produce by December 7, 2016, documents responsive to Requests #4 through #20 of the Revised Subpoena, as limited by this Memorandum and Order, and a privilege log as described herein.

Any objections to the Memorandum and Order must be filed with the Honorable Frederic Block by December 9, 2016, or will be deemed waived. The filing of any objection will not automatically stay this Court's order of production.

        SO ORDERED.

Dated:    Brooklyn, New York
             November 23, 2016

/s/    *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**